UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK W. LAMBERT       *       CIVIL ACTION

VERSUS       *       NO: 06-2390

TECO BARGE LINE       *       SECTION: "D"(3)

<u>**ORDER AND REASONS**</u>

Before the court are the following motions:

(1) Plaintiff's **"Motion for Reconsideration of Order and Reasons of July 17, 2007 Granting in Part the Motion in Limine to Exclude, or Alternatively, to Limit Certain Testimony of Harold A. Asher and Order Granting Motion in Limine to Exclude Dr. Kenneth Adatto as a Witness"** (Doc. No. 64);

(2) Plaintiff's **"Motion in Limine to Exclude Kenneth Boudreaux and Nancy Favalora"** (Doc. No. 69);

(3) Plaintiff's **"Motion to Continue Trial"** (Doc. No. 70); and

(4) Defendant's **"Motion in Limine to Exclude Certain Opinions of Harold A. Asher"** (Doc. No. 75).

The motions are respectively opposed, and they are before the court on briefs, without oral argument.  Now, having considered the memoranda of counsel, the record, and the applicable law, the court rules.

## (1)  Plaintiff's "Motion for Reconsideration" (Doc. No. 64)

In this motion, Plaintiff argues that his **loss of earning capacity** should be based on earnings *in excess* of his actual earnings at the time of his alleged injury.  The court agrees, and now grants Plaintiff's Motion for Reconsideration as it pertains to loss of earning capacity.

In the court's "Order and Reasons" of July 17, 2007 (Doc. No. 64), the court did not, but should have, recognized that there is a *difference* between future loss of earnings and loss of earning capacity.  As the court previously held, "calculation of the lost income stream begins with the gross earnings of the injured party at the time of the injury."[1]  *Culver v. Slater Boat Co.*, 722 F.2d 114, 117 (5th Cir. 1983)(*Culver II*), *quoted in Randolph v. Laeisz*, 895 F.2d 964, 967 (5th Cir. 1990) and *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988).

---

[1]      "To this amount other income incidental to work, such as fringe benefits, should be added.  From it, the fact-finder should subtract amounts the wage earner would have been required to pay such as income tax and work expenses."  *Culver II*, 722 F.2d at 117.

2

However, the court now clarifies its opinion to state that this quotation from *Culver II* addresses future loss of earnings, but not loss of earning capacity.  In other words, while the determination of Plaintiff's **future loss of earnings** is tied to what Plaintiff was earning at the time of his alleged accident, the determination of Plaintiff's **loss of earning capacity** is not so limited because the jury may consider evidence of the enhanced earnings of tug boat captains, post-*Katrina*.

The court has considered whether the supplemental report (dated July 23, 2007) of Plaintiff's vocational rehabilitation expert, Thomas Meunier, contains sufficient evidence that the enhanced earnings of tug boat captains, post-*Katrina*, is permanent, and not a temporary phenomenon or bubble.  And the court finds that while it is a close call, the court will allow Mr. Meunier to testify regarding the enhanced earnings, subject to cross-examination.[2]

---

[2]      The court notes with interest that: (1) Hurricane Katrina hit the New Orleans, Louisiana area on or about August 29, 2005; and (2) Plaintiff's alleged accident occurred on or about March 26, 2006.  Some 7 months post-*Katrina*, Plaintiff (according to the original report of Plaintiff's economist, Harold Asher) was earning $310 per day on a 21 days on and 21 days off hitch or $56,575 annually, while Mr. Meunier reports (in his report dated April 30) that post-Katrina, boat captains have enhanced earnings in the range of "$330 to $500 per day, based upon a number of possible work schedules, to include a 28 and 14, 20 and 10, 10 and 5, 14 and 7, or 7 and 7." (*See also* Meunier's Supp. Report dated July 25, 2007, wherein Meunier reports "I have determined that captains with Mr. Lambert's experience have an earning capacity of up to $500.00 per day since Hurricane Katrina"; and Asher's original report, wherein Asher calculates the $330 to $500 per day range to be equivalent to "average $415 per day or $75,738 annually).

Further, to avoid an impermissible double recovery, the court will charge the jury on the distinction between future loss of earnings and loss of earning capacity.  Finally, any award given to Plaintiff for either future loss of earnings and/or loss of earning capacity, will be **capped** using Plaintiff's **work-life expectancy as set forth by the United States Department of Labor's Bureau of Labor Statistics**.  (*See* court's ruling, *infra*, regarding Defendant's "Motion in Limine to Exclude Certain  Opinions of Harold A. Asher" (Doc. No. 75)).

In his Motion for Reconsideration, Plaintiff also argues that the court should reverse its prior ruling and allow Dr. Adatto to testify at Trial.  However, Plaintiff has failed to submit any new evidence to justify his failure to timely designate Dr. Adatto as a witness and timely provide Defendant with Dr. Adatto's expert report.  As the court previously found, Plaintiff failed to obtain and deliver to counsel for Defendant an expert report form Dr. Adatto by Plaintiff's expert report cut-off date of May 11, 2007. Further, Plaintiff failed to name Dr. Adatto as a witness on Plaintiff's Witness List which was due on June 11, 2007.  The only physicians listed by Plaintiff on his Witness List were Plaintiffs' treating orthopedic physicians, Drs. Natelson and Degnan.

The video depositions of Drs. Natelson and Degnan were taken on June 19 and 20, 2007.  On June 20, 2007, Plaintiff filed an

4

Amended Witness list identifying Dr. Kenneth Adatto who will "testify regarding AMA guidelines on restrictions for patients after having a cervical fusion and potential treatment for Mr. Lambert's neck and back." (*See* Doc. No. 37).

Trial in this case is presently set for the week of September 10, 2007, and a Pre-Trial Conference was held on Wednesday, August 8, 2007.    Allowing Dr. Adatto to testify would undermine the efforts of this court to make the trial an orderly search for the truth.   Accordingly, Dr. Adatto will not be permitted to testify.

Accordingly;

**IT IS ORDERED** that Plaintiff's **"Motion for Reconsideration of Order and Reasons of July 17, 2007 Granting in Part the Motion in Limine to Exclude, or Alternatively, to Limit Certain Testimony of Harold A. Asher and Order Granting Motion in Limine to Exclude Dr. Kenneth Adatto as a Witness" (Doc. No. 64)** be and is hereby **GRANTED IN PART AND DENIED IN PART, as set forth above**.

### (2)  Plaintiff's "Motion in Limine to Exclude Kenneth Boudreaux and Nancy Favalora" (Doc. No. 69)

In this motion, Plaintiff argues that Defendant failed to timely provide him with copies of expert reports from Defendant's economist, Kenneth Boudreaux, and Defendant's vocational rehabilitation counselor, Nancy Favalora.   However, Defendant has

5

provided sufficient evidence that these reports were timely
provided, via facsimile, to Plaintiff's counsel.

Accordingly;

**IT IS ORDERED** that Plaintiff's **"Motion in Limine to Exclude
Kenneth Boudreaux and Nancy Favalora" (Doc. No. 69)** be and is
hereby **DENIED.**

### (3) Plaintiff's "Motion to Continue Trial" (Doc. No. 70)

In this motion, Plaintiff argues that the court should
continue the Trial (presently set on September 10, 2007), because
Plaintiff is currently seeking treatment from Dr. Adatto and
Plaintiff's medical condition will not be known by September 10,
2007. However, as the court has already found, Plaintiff has
provided no justification for his untimely designation of Dr.
Adatto, and through his Motion to Continue Trial, Plaintiff is
attempting to get in the back door what he cannot get through the
front door. The court also notes that Dr. Adatto states on page 5
of his report dated July 16, 2007, that Plaintiff "will stay under
the care of his doctors in Tennessee."

Plaintiff also argues that the Trial should be continued
because Defendant did not timely produce the expert reports of
Kenneth Boudreaux and Nancy Favalora, and there is not sufficient

6

time to prepare for the cross-examination of Nancy Favalora.  The court rejects this argument, because as the court has already found, Defendant's expert reports were timely provided to Plaintiff's counsel.

Accordingly;

**IT IS ORDERED** that Plaintiff's **"Motion to Continue Trial" (Doc. No. 70)** be and is hereby **DENIED.**

### **(4)  Defendant's "Motion in Limine to Exclude Certain Opinions of Harold A. Asher" (Doc. No. 75)**

In the court's "Order and Reasons" of July 17, 2007 (Doc. No. 63), the court pointed out that in Mr. Asher's original report, Mr. Asher "assumed that Mr. Lambert would have remained in the workforce until age 65 and alternatively until age 67." (Asher Original Report at p. 3).  The court found that this was impermissible, because

> Even if retirement age for [Plaintiff] could be anticipated to be age 65 [67 here], it is far from certain that, even in the absence of [his] injury, he would have continued to work until that time.  He might have, as some workers do, decided to retire early.  He might have become disabled before then as a result of illness or some other misadventure.  He might have died before then.  The phrase "work-life expectancy" literally reflects its meaning: the average number of years that a person of a certain age will both live *and* work.  Such an average is not conclusive.  It may be shown than a particular person, by

> virtue of his health or occupation or other
> factors, is likely to live *and* work a longer,
> or shorter, period that the average.  Absent
> such evidence, however, computations should be
> based on the statistical average.

*Madore v. Samson Ocean Systems, Inc.,* 732 F.2d 475, 478 (5th Cir.

1984)(Rubin, J.), *cited in Randolph*, 896 F.2d at 968.

This court also stated:

> Plaintiff argues that at Trial, he will
> "testify that he intended on working until his
> social security retirement age, which will be
> age 67.  Thus, it will be a jury question for
> TECO to attack the credibility of Mr. Lambert
> as to his intentions on working to age 67."
> (Plaintiff's Opp., Doc. No. 47 at p. 2).
> However, absent evidence to show that
> Plaintiff's personal characteristics are
> likely to give him a longer worklife than the
> worklife expectancy rates complied by the
> United States Department of Labor's Bureau of
> Labor Statistics,[3] Mr. Asher will not be
> allowed to testify regarding his future wage
> loss calculations based on his assumptions of
> Plaintiff's worklife expectancy or Plaintiff's
> self-serving intentions of working to 67.

(*See* Order and Reasons of July 17, 2007, Doc. No. 63 at p. 7).

However, the court allowed Mr. Asher to **RE-CALCULATE**

Plaintiff's future wage loss using Plaintiff's gross earnings at

the time of his injury and statistical worklife data complied by

the United States Department of Labor's Bureau of Labor Statistics.

---

[3]     There is no evidence in this matter (other than Plaintiff's self-serving intentions) to support a personal characteristic of Plaintiff that is likely to give him a longer worklife than the worklife expectancy rates compiled by the United States Department of Labor's Bureau of Labor Statistics.

The court instructed that if Plaintiff engaged Mr. Asher to perform such re-calculations, Mr. Asher must set forth his re-calculations in a supplemental report, which Plaintiff's counsel had to submit to Defendant's counsel and the court by 3:00 p.m. on Wednesday, August 1, 2007.  (*Id*. at p. 8).

Plaintiff subsequently provided the court and defense with a supplemental report prepared by Mr. Asher and dated July 20, 2007. However, in the instant motion, Defendant argues that Mr. Asher "continues to calculate Plaintiff's alleged future losses based upon an assumed worklife in excess of the Department of Labor statistics."  (Doc. No. 75-2, p. 1).  Defendant further argues that:

> Mr. Asher assumes that Plaintiff would have remained in the work force for a median of 15.21 years as of the date of trial.  He gets this assumed figure from an article entitled "Probability Mass Functions for Years to Final Separation from the Labor Force Induced by the Markov Model."[4]  This article calculates average "years to final separation (YFS) from the labor Force," which, as the article admits, is not the same as the "additional years of labor market activity (YA)" commonly referred to as "worklife expectancy."[5]  In fact, the first paragraph of the article clearly states that "the YA (worklife expectancy) and YFS (years to final separation) differ in the sense that the

---

[4]   This article is attached to Defendant's motion.  (*See* Doc. No. 75-3).

[5]   *See* article's "Introduction," Doc. No. 75-3.

> former (worklife expectancy) only counts time
> spent in the labor force and excludes time
> spent alive but inactive, while the latter
> (years to final separation) counts all time
> (whether active or inactive) prior to leaving
> the labor force through retirement or death."[6]
> Admittedly, then, Mr. Asher's YFS assumption
> is not "worklife expectancy" [per the
> Department of Labor Statistics].

(Defendant's Memo., Doc. No. 75-2, at p. 2).

The court agrees, but the court will allow Mr. Asher to testify in accordance with that portion of his second supplemental report dated August 8, 2007, wherein he used the same worklife used by Dr. Boudreaux in his report dated July 9, 2007. (*See* Doc. No. 77-5, August 8, 2007 report by Asher, attached to Plaintiff's Opp.).

Accordingly;

**IT IS ORDERED** that Defendant's **"Motion in Limine to Exclude Certain Opinions of Harold A. Asher" (Doc. No. 75)** be and is hereby **GRANTED** to the extent that Mr. Asher will <u>not</u> be allowed to testify regarding Plaintiff's future wage loss based on calculations set forth in Mr. Asher's original report and supplemental report dated July 20, 2007. However, Mr. Asher will be allowed to testify regarding Plaintiff's future wage loss based on calculations set forth in Mr. Asher's second supplemental report

---

[6]     *Id.*

10

dated August 8, 2007, using the same worklife used by Dr. Boudreaux in his report.

New Orleans, Louisiana, this **23rd** day of **August**, **2007.**


_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE